**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION**

| | | |
|---|---|---|
| STEMCELLS INC., *et. al*, | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | Civil Action No. AW-06-1877 |
| | * | |
| NEURALSTEM INC., | * | |
| | * | |
| Defendant. | * | |

**MEMORANDUM OPINION**

Pending before this Court are Defendant Neuralstem, Inc.'s Motion for Partial Summary Judgment of Intervening Rights (Doc. No. 94) and Motion for Partial Reconsideration of the Court's August 4, 2009, Order and Opinion Denying Defendant's Motion to Dismiss (Doc. No. 105). No hearing is necessary as provided by Local Rule 105.6 (D. Md. 2008). The Court has considered the arguments asserted in the briefings and, as articulated below, **DENIES** both of Defendant's motions.

**FACTUAL BACKGROUND**

Plaintiffs, StemCells, Inc. and StemCells California, Inc. (collectively "StemCells"), filed a complaint in case number AW-06-1877 on July 24, 2006, claiming that Defendant, Neuralstem, Inc., infringed four of its patents referred to as patents '346, '709,'872, and '832.[1] This Court administratively stayed this matter at the joint request of the parties, pending completion of the United States Patent and Trademark Office's ("USPTO") reexamination of the validity of these four patents. Subsequently, StemCells filed a second complaint in case number AW-08-2664, which alleged that Defendant also infringed patent numbers '418 and '505.[2] In a

---

[1] The patent numbers are 6,294,346; 7,101,709; 6,497,872; and 5,581,832.
[2] The full patent numbers are 7,115,418 and 7,361,505.

press release announcing the USPTO's issuance of patent '505, StemCells asserted its position that third parties would have to seek a license from StemCells if they wished to make commercial use of their patented neural stem technology.  As a result of this statement, Neuralstem filed a declaratory judgment action in this Court on May 7, 2008, in case number AW-08-1173, seeking a declaration that patent number '505 was not enforceable, not valid, and that use of the neural stem technology therein did not constitute infringement.   Stemcells responded with a counterclaim for trade libel and unfair competition resulting from Neuralstem's filing of the declaratory judgment action and several public statements made by Neuralstem's CEO on May 7, 2008.  The Court consolidated these three cases under the lead case of AW-06-1877 on July 27, 2009.

After the USPTO completed reexamination of the four patents in May 2009, the parties jointly moved to reopen the case and to lift the administrative stay, which the Court ordered on June 8, 2009.  On July 20, 2009, Neuralstem filed the pending motion for partial summary judgment seeking to dismiss the infringement claims for its actions prior to the reissuance of the patent certifications and for intervening rights to continue to use or sell products made before the reissuance.  Meanwhile, on August 4, 2009, the Court issued an Opinion and Order denying Neuralstem's motion to dismiss counts three and five to StemsCells' counterclaim for trade libel and unfair competition.  Neuralstem filed a motion for partial reconsideration of the Court's Order on August 18, 2009, claiming that the Court (1) did not address StemCells' failure to plead special damages; (2) did not apply the *Twombly* standard for dismissal of the pleadings; and (3) erroneously construed the May 7, 2008, public statements made by Defendant as misleading and false rather than a mere opinion.

## **STANDARD OF REVIEW**

Summary judgment is only appropriate if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). The Court must draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded to particular evidence. *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 520 (1991) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). To defeat a motion for summary judgment, the nonmoving party must provide evidence that shows a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). While the evidence of the nonmoving party is to be believed and all justifiable inferences drawn in his or her favor, a party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences. *See Deans v. CSX Transp., Inc.,* 152 F.3d 326, 330-31(4th Cir. 1998). Additionally, hearsay statements or conclusory statements with no evidentiary basis cannot support or defeat a motion for summary judgment. *See Greensboro Prof'l Fire Fighters Ass'n, Local 3157 v. City of Greensboro*, 64 F.3d 962, 967 (4th Cir. 1995).

Moreover, Rule 59(e) permits a court to alter or amend a judgment. The purpose of Rule 59(e) motions is to allow "a district court to correct its own errors, sparing the parties and the appellate court of the burden of unnecessary appellate proceedings." *Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998). Although Rule 59(e) does not provide a standard for governing the grant of motions to amend or alter, the Fourth Circuit has recognized that an amendment to earlier judgments is appropriate for three grounds: "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *Id.*; *Hutchinson v. Stanton*, 994

F.2d 1076, 1081 (4th Cir. 1993).  However, a party cannot assert new theories or arguments that could have been raised before the judgment as the basis for the motion to alter the earlier judgment.  *Pac. Ins. Co.*, 148 F.3d at 403.  Nevertheless, reconsideration is an "extraordinary remedy which should be used sparingly." *Id.*

## ANALYSIS

### I. Motion for Partial Summary Judgment

Under 35 U.S.C. § 252 (2006), when a patent owner's original patent claims are reexamined, the alleged infringing party cannot be held liable for damages due to infringing actions that occurred before the reexamination, unless the original patent claims and the reissued claims are substantially identical.  *Bloom Eng'g Co. v. N. Am. Mfg. Co.*, 129 F.3d 1247, 1250 (Fed. Cir. 1997).  Moreover, if the original claims are substantially different from the reexamined claims, the infringing party has an intervening right to "continue to use and sell a product made before the issuance of the reexamination certificate."  *BIC Leisure Prods. v. Windsurfing Intern, Inc.*, 1 F.3d 1214, 1220-21 (Fed. Cir. 1993).  Intervening right is an affirmative defense limiting damages but "does not compel judgment of non-infringement." *Giese v. Pierce Chem. Co.*, 43 F. Supp. 2d 98, 112 (D. Mass 1999); s*ee BIC Leisure Prods.*, 1 F.3d at 1220-21. The question of whether a reexamined claim is "substantially identical" to the original claim "is an issue of law for the court because of the 'general principal that the interpretation and construction of patent claims is a matter of law, exclusively for the court.'"  *Henrob Ltd. v. Böllhoff Systemtechnick GMBH & Co.*, No. 05-CV-73214-DT, 2009 WL 3188572, at *10 (E.D. Mich. Sept. 29, 2009) (citations omitted).  However, claim interpretation of reissued patents generally requires the court to rely on expert testimony to comprehend the complex technology involved in patent disputes.  *See Liatram Corp. v. NEC Corp.*, 952 F.2d 1357, 1363 (Fed. Cir. 1991) (holding that summary judgment was improper when claim interpretation involved disputed facts).  As the

Fourth Circuit explained in *Technitrol Inc. v. Control Data Corp.*, summary judgment is permissible in patent infringement cases but only when there are no genuine issues of material facts and that district courts should grant such motions with "great caution."  550 F.2d 992, 996 (4th Cir. 1977).  Moreover, the First Circuit in *Steigleder v. Eberhard Faber Pencil Co.*, emphasized that a district court should assure itself that it is capable of understanding the patent claims without "the need of technical explanation" by an expert witness before granting a motion for summary judgment.  176 F.2d 604, 604-05 (1st Cir. 1949).

Neuralstem's motion for partial summary judgment seeks to have this Court interpret the reexamined claims of the four patents at issue as substantially different from the original claims, based on a plain reading of the language within the claims, and thereby limit Neuralstem's liability for damages in this infringement matter and permit its continued use of products made before the reissuance of the claims.  StemCells counters that the Defendant's motion is premature because discovery has not been completed and that comparison of the original and reissued patent claims require a thorough analysis that is not capable without a claim construction hearing.  In order for the Court to grant Defendant's motion, it would essentially engage in claim construction of complex stem cell technology before further development of the case and without guidance from experts more skilled in the art.  Accordingly, the Court declines to resolve the issue of whether the original and reissued claims are substantially identical at this early stage in the litigation.[3]

**II.   Motion for Reconsideration**

Neuralstem first seeks a reconsideration of the Court's August 4, 2009, Opinion and Order because the Court did not accurately consider the requirement, under California law, that a

---

[3] While the Court has presided over numerous patent cases in the past fifteen years, the Court vividly recalls being reversed on one occasion by the Federal Circuit for having made an early determination of an affirmative defense issue which this Court believed [albeit incorrectly] had been clearly established by the record.  Therefore, this Court is inclined to permit this complex patent matter to further develop before disposing of any part of the claim.

plaintiff must specifically plead special damages in a trade libel claim. The Court has reviewed the cases Neuralstem has referred to the Court, and agrees with Neuralstem that special damages must be specifically pled. While Stemcells' complaint alleges that it was in negotiations with two other companies that were subsequently terminated, the Court believes that the complaint is rather bare bones in meeting the requirement for pleading special damages. Plaintiffs are, however, generally permitted leave to re-plead their complaints in order to cure any deficiencies with respect to adequately pleading special damages. Moreover, because this case is currently in discovery the Court believes that requiring StemCells to re-plead at this point would only serve to further delay the matter rather than to foster efficient case manangement. Furthermore, discovery will likely provide Neuralstem with a better opportunity to ascertain the extent of StemCells' damages. Nevertheless, should the case reach a point where the focus is on damages, the Court will consider any parties request to have special damages more specifically stated.

Neuralstem also claims that the Court applied the wrong standard for a motion to dismiss. Neuralstem points out the new standard in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), which requires plaintiffs to plead facts that demonstrate a plausible right to recovery. The Court acknowledges the pleading standard of *Twombly* and agrees with Neuralstem that a plaintiff's pleading must set forth facts sufficient to show more than a mere possibility of recovery. However, after careful review of StemCells' counterclaim, the Court still believes that StemCells has plausibly and sufficiently pled all elements required to support cognizable claims raised therein.

Lastly, Neuralstem contends that the Court erroneously interpreted the statements made by its President and CEO on May 7, 2008, as false and misleading instead of as a mere opinion protected under the First Amendment. Further, Neuralstem argues that the Court mistakenly

found these statements to be false and untrue based on the USPTO's failure to find inequitable conduct and contends that the USPTO has no authority to make such findings.  The Court has reviewed its Opinion in its entirety and believes that it did not misapprehend key facts, and believes that StemCells sufficiently pled facts to support a conclusion that the May 7 statements were false and misleading.  The Court views Neuralstem's claim that the Court misapprehended key facts as no more than "cherry-picking" and that to the extent that the Court improperly considered only a portion of the May 7 statement, did not consider the quote in context, or improperly assigned the issue of inequitable conduct to the USPTO, the Court is not convinced that the overall conclusions set forth in its Memorandum Opinion are erroneous.  Instead, discovery and arguments made in subsequent motions for summary judgment will assist the Court in determining whether the statements should qualify as protected speech under the First Amendment.  In sum, after reviewing the motion for partial reconsideration, the Court does not believe that Neuralstem has presented a cogent basis for this Court to reconsider its Memorandum Opinion and Order dated August 4, 2009.

## **CONCLUSION**

For the reasons set forth above, the Court DENIES Neuralstem's Motion for Partial Summary Judgment (Doc. No. 94) and Motion for Partial Reconsideration of the Court's August 4, 2009, Order and Opinion Denying Neuralstem's Motion to Dismiss (Doc. No. 105).  A separate Order shall follow.


October 30, 2009                                                                  /s/
        Date                                                         Alexander Williams, Jr.
                                                                     United States District Court Judge